## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

**JAMES J. WINTERS, ADC #98581**                                     **PLAINTIFF**

**V.**                          **CASE NO. 5:15-CV-00317 DPM/BD**

**GERALD ROBINSON, et al.**                                     **DEFENDANTS**

### RECOMMENDED DISPOSITION

**I**.      **Procedure for Filing Objections**

This Recommended Disposition ("Recommendation") has been sent to Judge D.P. Marshall Jr.  You may file written objections to this Recommendation.  If you file objections, they must be specific and must include the factual or legal basis for your objection.  Your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record.  By not objecting, you may also waive any right to appeal questions of fact.

**II.**      **Background**

James Winters, an Arkansas Department of Correction inmate formerly housed at the W.C. "Dub" Brassell Detention Center ("Detention Center), filed this lawsuit pro se.[1] In his complaint, he claims that his conditions of confinement at the Detention Center

---

[1]  Mr. Winters originally filed this lawsuit on behalf of Mark Stivers, and Christopher Alan Funderburg, as well as for himself.  The Court, however, has dismissed the claims raised by Plaintiffs Stivers and Funderburg.  (#21)

were unconstitutional.  (Docket entry #2)  Specifically, Mr. Winters alleges the following: the Detention Center did not have a proper grievance procedure; he had to sleep on the floor for two months because there were no beds available at the Detention Center; misdemeanor pod 2, where he was held, was built to accommodate 54 inmates, but as many as 90 inmates were held there during his detention; the pod lacked exit signs and ultraviolet lights; no guard was assigned to the pod; and he was denied outside yard call.

Defendants have now moved for summary judgment on Mr. Winters's claims. (#36)  Mr. Winters has not responded to the Defendants' motion.  Based on the undisputed evidence presented, Mr. Winters's claims should be DISMISSED, with prejudice.

**III.**   **Discussion**

A.   Standard

Summary judgment is proper when the facts important to the outcome of a lawsuit are not in dispute, and the moving party is entitled to judgment without the need for a trial.  FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

B.   Official Capacity Claims

Defendants are employees of Jefferson County, Arkansas.  Mr. Winters's claims against these Defendants in their official capacities are, in effect, claims against Jefferson County.  *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010).  Local governments such as

Jefferson County are not liable under § 1983 for injuries inflicted solely by their

employees or agents. *Monell v. New York Dep't. of Soc. Servs.*, 436 U.S. 658, 694, 98

S.Ct. 2018 (1978). Rather, to hold Jefferson County liable under § 1983, a "plaintiff must

show that a constitutional violation was committed pursuant to an official custom,[2]

policy,[3] or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817

(8th Cir. 2009) (citation omitted).

Here, Mr. Winters alleges that Jefferson County had a custom or practice of

subjecting detainees to unconstitutional conditions of confinement. He has not alleged,

however, that he suffered any injury as a result of any Jefferson County custom or policy.

Without an injury, he cannot proceed against the Defendants in their official capacities.[4]

---

[2] To establish a custom, a plaintiff must prove that the county engaged in a continuing pattern of unconstitutional misconduct, not just a single unconstitutional act. *Marksmeier v. Davie*, 622 F.3d 896, 902-03 (8th Cir. 2010).

[3] For purposes of § 1983, a policy is a "deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Marksmeier*, 622 F.3d at 902.

[4] In his complaint, Mr. Winters sued the Defendants only in their official capacities. Because he is proceeding without the help of a lawyer and because the Defendants have moved for summary judgment on for Defendants in both their official and individual capacities, the Court will construe Mr. Winter's complaint as asserting both official and individual capacity claims against the Defendants.

C.    Grievance Procedure

To the extent that Mr. Winters alleges that the Defendants failed to properly respond to his grievances, this allegation does not state a federal claim for relief.  Under settled law, inmates have no constitutional right to an inmate grievance procedure at all. *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002); and *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). Therefore, a prison official's failure to properly process or respond to a grievance, standing alone, is not conduct that states a federal claim for relief.

D.    Separate Defendant Robinson

Defendants argue that Mr. Winters's claims against Defendant Robinson must be dismissed because he does not allege sufficient facts against Defendant Robinson to hold him in this lawsuit.  In the body of his complaint, however, Mr. Winters specifically identifies the Defendants that he says failed to provide him adequate housing.  Mr. Winters states, "I truly feel like the people in charge of [this] jail don't care about my health like Capt. Addams[sic][,] Major Tyler, Chief Greg Bowlin, and Sheriff Gerald Robinson."  (#2 at p.4)  Defendant Robinson is not entitled to dismissal of Mr. Winters's claims against him based on a lack of allegations.

E.    Conditions of Confinement

Based on the record, it is unclear whether Mr. Winters was a pre-trial detainee or a convicted person at the time of the events giving rise to this lawsuit.  In his complaint, Mr. Winters states that he was "in jail and still awaiting trial on pending criminal

4

charges." (#2 at p.3)  Based on this statement, the Court will treat Mr. Winters as a pre-trial detainee for purposes of this motion.

As a pre-trial detainee, Mr. Winters's claims are analyzed under the due process clause of the fourteenth amendment.  *Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (citing *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861 n. 16 (1979)). Defendants can be held liable for violating Mr. Winters's due process rights if the Detention Center's conditions of confinement amounted to punishment that deprived him of the "minimal civilized measures of life's necessities. . . ."  *Owens*, 328 F.3d at 107 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)).  To prevail, Mr. Winters must also show that prison officials were deliberately indifferent to "an excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  That said, "[a]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment."  *Id*. at 838.

Mr. Winters alleges that he was forced to sleep on a mattress on the floor for two months while housed at the Detention Center.  While prisoners do not have an absolute right to be placed in a cell with bedding, *Williams v. Delo*, 49 F.3d 442, 446 (8th Cir. 1995), courts will consider the length of time an inmate is forced to sleep on the floor and the health of the inmate in determining whether the lack of bedding created a significant risk to the detainee.

5

Here, Mr. Winters alleges that he suffered from a "bad back" while detained, but he does not allege that he sustained an additional injury as a result of sleeping on a mattress on the floor.  Mr. Winters alleges that he was forced to sleep on the floor for an extended time period, but he does not allege that he was subject to additional, aggravating conditions, such as being exposed to human waste from a nearby toilet.  *Owens*, 328 F.3d at 1027 (claim remanded to trial court when inmate was forced to sleep next to a toilet for five weeks);  *Hubbard v. Taylor*, 538 F.3d 229 (3d Cir. 2008) (having to sleep on the floor for three to seven months was not excessive).  Furthermore, the undisputed evidence offered by the Defendants indicates that the same type mattresses were provided to inmates sleeping on the floor and those sleeping on beds.  (#37-3 at p.1)  Given these facts, the Defendant's failure to provide Mr. Winters a bed for his mattress for two months of his detention is not conduct that rises to the level of a due process violation.

Mr. Winters claims that the pod where he was confined was overcrowded. Significantly, however, he does not allege that the overcrowding led to a lack of food, medical care, or sanitation; nor does he allege that the overcrowding resulted in increased violence among other inmates or that it otherwise made his conditions of confinement intolerable.  *Patchette v. Nix*, 952 F.2d 158, 163 (8th Cir. 1991).

Mr. Winters alleges that he was not provided outside yard call during his detention. Even if true, however, the denial of yard call for a relatively short period is not a constitutional violation per se.  *Knight v. Armontrout*, 878 F.2d 1093, 1096 (8th Cir.

1989) (holding that the lack of outside recreation for thirteen days was not a constitution violation); *see also Rahman X. v. Morgan*, 300 F.3d 970, 974 (8th Cir. 2002) (holding that the inability to go outside for three months was not a constitutional violation); *Rust v. Grammar*, 858 F.2d 411, 414 (8th Cir. 1988) (holding that the suspension of yard privileges for thirteen days was not a constitutional violation).

Mr. Winters alleges that the pod where he was held lacked exit signs and ultraviolet lights. The Defendants, however, have offered evidence showing that the Detention Facility did use ultraviolet lights, but that those lights could not necessarily be seen by inmates. (#37-3 at p.1) Further, undisputed evidence shows that, a month prior to Mr. Winters's detention at the Detention Center, the facility passed its fire inspection for the calendar year 2015. (#37-1 at p.1) On June 18, 2015, the Detention Center also passed inspection by the Arkansas Criminal Detention Facilities Review Committee, and the inspection report specifically noted that exits were "plainly marked." (#37-2 at p.7)

Finally, Mr. Winters alleges that there was no guard on duty in the pod where he was held. Again, Mr. Winters fails to provide any evidence that he sustained any injury as a result of any lack of security in his pod or that the Defendants were aware of any significant risk posed by the lack of a guard in that pod. The undisputed evidence offered by the Defendants shows that Detention Center guards check misdemeanor pods 1 and 2 at least hourly, and that those pods were under constant camera/video surveillance. (#37-3 at pp.1-2)

7

**IV.**   **Conclusion**

Based on the undisputed evidence in the record, the Court recommends that the

Defendants' motion for summary judgment (#36) be GRANTED and that this case be

DISMISSED, with prejudice.

DATED this 15th day of June, 2016.

_____

UNITED STATES MAGISTRATE JUDGE